SAMUEL S. WEED *vs.* EBENEZER D. DRAPER & others.

W. and D. made a written contract, the first clause of which stipulated that D. should build without expense to W. six machines under a patent owned by W., and, whenever either should sell "a machine out of said six or other machines D. may build under said patent," W. should have a share of the proceeds, and D. the balance; and another clause fixed a minimum price per machine. The second clause provided that D. should build "any number of said machines more than six that W. may order, if W. does not order more than twelve at any one time;" and it was agreed that, in event of such order, D.

should build " two of them each month thereafter, until the whole order is filled." A further clause provided that either might terminate the contract on four months' notice to the other; " but, when notice is given, all orders up to the end of that time which have been given are to be filled," " and all machines not completed to be completed;" and, if such notice should be given by W., " all machines which W. orders, together with any others which D. may have built or may be building at the time notice is given, to the number of six, are to be taken by W., and paid for" at a certain rate; but " if notice is given by D., then for all machines ordered or built or being built at the time the contract terminates, D. is to take the same and pay W. therefor" a certain sum " apiece, or deliver the same to W. within one month after the termination of the contract, by W.'s paying D. therefor for each machine" a certain sum. And finally it was agreed that, " if W. is not paid the sums above stipulated by D. on the sale of each and every machine, then W. shall have the right to terminate this contract at once, without notice." Four of the six machines being finished, and the two others partly built, D. wrote to W. that after finishing the six a new arrangement would be necessary on account of the advance in price of material and labor. W., a few days later, gave D. an order for twelve additional machines. D. soon afterwards gave W. a formal notice for termination of the contract in four months; and then finished the two machines; and refused to build any of the twelve. Part of the six finished were sold, and the proceeds divided under the contract; and part remained unsold in D.'s hands. *Held,* 1. that the clause relating to termination of the contract by either party on four months' notice did not apply to the six machines stipulated for in the first clause, and that D. was under no obligation to pay W. anything on account of either of them until after its sale; 2. that D.'s agreement to take " all machines ordered or built or being built" at the time the contract should end by notice from himself did not embrace the twelve machines ordered by W. but never begun to be built; but 3. that W. could hold D. liable in damages for failing to build two machines per month up to the end of the four months in partial execution of such order.

CONTRACT. In the superior court facts were agreed as follows: The defendants, who were partners, doing business as machinists, entered into a written contract with the plaintiff on November 10, 1863, which recited that, whereas the plaintiff had obtained letters patent for an improvement in sole-cutting machines, and the defendants desired to build and sell such improved machines, the defendants agreed to build six such machines without any expense to the plaintiff, except that he should furnish a set of patterns for the same, and " to finish, ready for immediate use, at least three of said six machines within two months from the day the patterns are furnished," " and all within three months from the day the patterns are so furnished;" and continued as follows:

" It is further agreed that, when said firm, or either of them, sells a machine out of said six or other machines they may build under said patent, said Weed shall have $140 out of the pro-

ceeds of sale of each and every machine so sold, as soon as the sale is made, the proceeds of sale in all such cases to be paid over and into the hands of said firm by the person or persons who purchase a machine or machines; but when said Weed sells a machine, either out of said six, or any other machines said firm may build, then said Weed is to have out of the proceeds of sale of each and every machine so sold $160, the proceeds of sale in all such cases to be paid over and into the hands of said firm by the person or persons who purchase a machine or machines, except as hereinafter stated, and the proceeds of sale over and above said $140 and $160, as aforesaid, are to be and belong to said firm.

" And it is further agreed that said firm is to build any number of said machines more than said six that said Weed may order, if said Weed does not order more than twelve at any one time; and said firm is to have the right to build any number of machines, over and above what said Weed may order, as they may see fit to build, provided that said Weed shall have out of the proceeds of sale of each and every machine $140, if said firm or either of them sells, and $160 if said Weed sells, and that too as soon as said sale or sales are made.

" And it is further agreed that, if said Weed shall order any number of machines, not more than twelve, said firm is to build two of them in a complete and workmanlike manner, and ready for immediate use, each month thereafter, until the whole order is filled.

" And said Weed is to have the right to sell of all machines built by said firm as many as he can; and said firm is to have the same right."

" And said Weed is to have the right to take a machine at any time by paying said firm $140.

" And said firm is to have the right to build and vend any number of said machines, provided for each and every machine built and sold said Weed receives the amounts above stated, and at the time above stated, from said firm.

" And it is further agreed that, if said firm, or either of them, shall sell a machine to any person or persons on credit, then said

Weed is to receive $140 immediately, the same as though said sale had been for cash.

" It is also further agreed that either party to this contract may terminate it by giving the other four months' notice; but, when notice is given, all orders up to the end of that time which have been given are to be filled as above stated, and all machines not completed to be completed in the manner above stated; and all machines which said Weed orders, together with any others which said firm may have built or may be building at the time notice is given, to the number of six, are to be taken by said Weed, and paid for at the rate of $140 apiece within one year after the termination of the contract, provided said notice is given by said Weed; but if notice is given by said firm, then for all machines ordered or built or being built at the time the contract terminates, said firm is to take the same and pay said Weed therefor $140 apiece, or deliver the same to said Weed built in a complete and workmanlike manner, and ready for immediate use, within one month after the termination of the contract, by said Weed's paying said firm therefor for each machine $140 within six months after the termination of the contract, the same to be at the option of said Weed, which shall be done; if said firm takes the machines as above, said Weed is to have the right to sell as many of them as he can, and for every machine so sold said Weed is to receive the sum of twenty dollars as soon as the same is sold.

" And it is further agreed that, if said Weed is not paid the sums above stipulated by said firm, at once, on the sale of each and every machine, then said Weed shall have the right to terminate this contract at once, without notice and without injury to any damages that may have accrued to him by reason of any breach of this contract by said firm. And it is agreed that no machine is to be sold for less than $300."

Under this contract the defendants proceeded to build six machines, the plaintiff furnishing the patterns; but during the work the defendants, on May 12, 1864, wrote to the plaintiff: " Stock and labor have advanced so much that we shall be under the necessity of making a new arrangement after completing the

first six machines. If you can possibly spare the time, would like to have you call on us."

The plaintiff replied on May 18 : " You requested me to go to your place. It is not convenient for me to go now unless there is something urgent, but I will go in a short time." " While in Canada I got a number of orders for machines, and have agents there who will do all that can be done in selling them for me. I shall now pay my whole attention to selling and setting up machinery. Please finish off those now begun as soon as possible; also be getting the castings for more. I shall want twelve more before you will be able to finish them. Please hurry them as fast as possible." " Please let me know if it will be convenient for you to make the patterns and machines for me. Write soon."

The defendants answered on May 24. After receiving their answer, four of the six machines having then been finished, the plaintiff had an interview with them, at which they said to him that they did not regard his letter of May 18 as an order for additional machines under the contract, and asked him if he did; and he replied that he did, " and stated that he wanted them to build twelve additional machines at any rate, and wished them to consider him as then giving an order for twelve more machines, if his letter were not such an order."

The defendants afterwards wrote to the plaintiff on June 22 : " We can finish the six machines without a pulley pattern, but shall need one before making any more machines. You will recollect that we wrote you May 12, and again on May 24, to the effect that we could make no more machines after the first six without a new arrangement, on account of the advance in price of stock and labor. We intended that as a notice of termination of contract; but if it was not a legal notice, then we hereby give notice that we shall terminate the contract dated November 10, 1863, according to the terms therein specified, viz. : in four months from this date."

The defendants then finished the other two of the six machines; but did not make the twelve ordered by the plaintiff, nor any of them, and refused to do so.

Four of the six machines were sold and the proceeds divided pursuant to the contract; the two others remained unsold.

The plaintiff, before commencing this action, gave notice to the defendants "that he should look to them to pay him $140 on each and all machines either made, being made or ordered, sold or not sold, claiming these sums as payable to him in consequence of the defendants' having terminated the contract, and of the provisions of said contract giving him a certain option in such case."

At the trial, before *Putnam*, J., without a jury, there was no evidence that any of the additional machines, if built as requested by the plaintiff, could have been sold at any price; nor any evidence as to the value of the two machines remaining on hand; nor of any opportunities to sell them at the price named in the contract, or at any price.

As to the claim of the plaintiff that the defendants were liable for not building additional machines, the defendants denied any breach of contract on their part, or any liability to the plaintiff. And, as to so much of the claim as referred to the two machines built and not sold, they contended that none of the six machines were embraced or referred to in that clause which provided for a termination of the contract by notice given by either party; that, if so embraced, the sum payable in respect thereof was payable only after the machines should be sold; and that, before such sale, there would be no consideration to support a promise by the defendants to pay the plaintiff $140 in respect to either of them.

Upon these facts the judge ruled, *pro formâ*, that the plaintiff was not entitled to recover, and found for the defendants. The plaintiff alleged exceptions.

*B. C. Moulton*, for the plaintiff.

*F. A. Brooks*, for the defendants.

WELLS, J. The contract provides for the manufacture and disposal of six machines; and for a further continuance of the business under orders from the plaintiff, or by the voluntary undertaking of the defendants. The stipulations in regard to sales, division of the proceeds, the rights of the respective par

ties and their relation to the business during its continuance, extend to the whole manufacture, whether of the first six machines or of any subsequently built. The difficulty arises out of the clause relating to the termination of the contract and providing what shall be the rights of the respective parties thereupon.

We are satisfied that this clause, providing for a termination of the contract by either party, relates wholly to the subsequent business continued under orders or otherwise, and does not affect the agreement for the first six machines. That could be rescinded only by the plaintiff, upon failure of the defendants to make payment for sales, under another clause.

Upon the report, we think we must take the fact to be established that the defendants made their letter of June 22 the formal notice of termination; and that their previous communications were merely intimations of their purpose to do so. Also that the personal interview after the plaintiff's letter of May 18 rendered that letter equivalent to an order for twelve additional machines.

We are unable to give any force to the limitation of orders to the number of twelve machines, inasmuch as the provisions for termination limit the time for closing the business to the period of four months, and the defendants were under no obligation to construct more than two machines each month.

The defendants having given the notice to terminate the contract, the question is, What obligations did they thereby assume?

1. As to the six machines, their obligations are not changed. Those were absolutely provided for, and the defendants owe nothing on account of them until they are sold.

2. Of the twelve machines ordered, none were built and none were " being built at the time the contract terminated." The provision is, that " for all machines ordered or built or being built" the defendants are to " take the same and pay said Weed therefor $140 apiece." This language seems to imply the then present existence of some specific article, capable of being taken and paid for. In the other alternative, which the plaintiff might elect to enforce upon such termination, the plaintiff was himself

to take the machines "ordered or built or being built," and the defendants were to "deliver the same to said Weed, built in a complete and workmanlike manner and ready for immediate use, within one month after the termination of the contract." As the defendants were only bound to construct machines at the rate of two each month, this provision could not have been understood, nor intended, to apply to an entire order of twelve machines, without regard to the progress that might have been made in their construction at the time the provision should become operative.

Taking the whole clause together, we think that the provision to take and pay for machines must, in each instance, be understood to apply to machines then in actual existence. The terms "ordered or built or being built" serve to extend the provision to machines begun as well as those completed within the time, and to machines undertaken by the defendants under the permission given in the contract, as well as those expressly ordered by the plaintiff. The bare order of the plaintiff, in no part executed by the defendants, cannot be construed as twelve machines to be taken and paid for by them; neither can it be treated as so many machines as the defendants might or ought to have constructed before the termination of the contract.

3. But the plaintiff is entitled to damages for the breach of the contract to construct the machines so ordered, at the rate of two in each month from the date of such order to the termination of the contract. Although the report states that there was no evidence as to the value of machines, nor that they could have been sold if manufactured; yet, as the case does not seem to have been tried in view of the construction of the contract which we have adopted, it seems proper that the plaintiff should have the opportunity to prove his damages. The provisions in regard to termination give the plaintiff certain advantages, or would have done so if the defendants had complied with its requirements on their part, which may bear upon the question of damages for its breach by them; and the plaintiff is entitled to whatever benefit this may give him in considering the question of the damages.                    *Exceptions sustained*