SAMUEL S. WEED *vs.* EBENEZER D. DRAPER & others.

W. and D. made a written contract, in which D. agreed to build, under a patent of W., six machines, without expense to W. " except he is to furnish patterns for the same; " and it was agreed that, out of the proceeds of the sale, by either party, of these six or any other machines which D. might build under the patent, W. should have a certain sum, and D. the balance; and W. agreed to " hold D. harmless in all cases of sales of machines by D., and in no other case, against any and all suits against D. for an alleged infringement of W.'s patent on any other patent." Another clause fixed a minimum price per machine, for sales. A further clause provided that D. should build, at the rate of two machines per month until the whole order should be filled, " any number of machines more than six that W. may order, if W. does not order more than twelve at any one time," to be sold in like manner; and it was stipulated " that W. is to furnish one set of patterns, and only one set of patterns, free of expense to D." It was also agreed that either party might terminate the contract on four months' notice to the other: " but that, when notice is given, all orders up to the end of that time which have been given are to be filled," and that, if D. should give the notice, then it should be at the option of W. whether D. should take " all machines ordered or built or being built at the 'ime the contract terminates," paying to W. a certain sum per machine, or D. sho ild deliver the same to W. within one month from the termination of the contract," receiving from W. a like sum per machine. Before the six machines were all built, W. gave to D. an order for twelve additional machines; and D. a month later gave W. a notice for termination of the contract in four months, and neglected and refused to build any of the twelve machines, but completed the original six. After this notice, C., the owner of another patent, gave D. notice that he should hold·D. liable for infringing his patent in building the six. W., after notifying D. that under the option clause in the contract he required D. to take the twelve machines and pay him the stipulated sum per machine, sued D. for breach of the contract; and in his declaration, after setting forth the contract and his order for twelve additional machines, alleged that D. " wholly neglected and refused to build the said twelve according to the plaintiff's order and the terms of said contract, and did wholly neglect and refuse to do so, up to the termination of said contract and ever since "; and then, under succeeding allegations, sought to recover the sum he had demanded from D. under the option clause. Jury trial was

Weed *v.* Draper.

waived, and the judge to whom the case was submitted found that during the year in which the contract was terminated "there was a demand for these machines in the market" at the minimum price fixed in the contract, and gave judgment for the plaintiff for the amount of the difference, upon ten machines, between the sum for which the defendants would have built them under the contract, and the larger sum which the plaintiff would have been obliged to pay to others for building them. *Held*, 1. that the plaintiff's attempt to avail himself of the option, in a state of facts under which it did not exist, was no bar to his remedy for a general breach of the contract; 2. that the declaration sufficiently alleged a general breach of so much of the contract as related to the order for twelve machines; 3. that the stipulation that W. was to furnish a set of patterns was not distinctly made by the form of the contract a condition precedent to the obligation of D. to begin to manufacture the twelve machines; 4. that the mere fact of a notice given by C. of his intention to prosecute D. for an infringement of patent afforded no defence to D. for refusing to fulfil that obligation; and 5. that D. had no good ground for exceptions to the measure of the damages assessed by the judge per machine, or to the number of machines on which he assessed them.

CONTRACT. Writ dated May 8, 1865. In 1867 this case was submitted to the judgment of the superior court on agreed facts, and was argued in this court at January term 1868 on exceptions alleged by the plaintiff, which were sustained, as reported 99 Mass. 53–60.

The declaration alleged that the defendants, who were partners, made a written contract with the plaintiff, dated November 10, 1863, a copy of which was thereto annexed. Many of the clauses of this contract were quoted, or their substance given, in the previous report, and the following is an abstract of all of them which are now material: After a preamble reciting that Samuel S. Weed, the plaintiff, had obtained "valid letters patent" for an improvement in sole-cutting machines, and the defendants desired to build and sell such improved machines, the defendants agreed with the plaintiff to build six such machines without any expense to him, "except he is to furnish patterns for the same;" and further agreed "to finish, ready for immediate use, at least three of said six machines, within two months from the day the patterns are furnished," "and all within three months from the day the patterns are so furnished." It was also stipulated that, whenever the defendants should sell a machine "out of said six or other machines they may build under said patent," the plaintiff should have $140 out of the proceeds; and whenever the plaintiff should sell a machine, "either out of said six or any other machines

said firm may build," he should have $160 out of the proceeds the balance of proceeds, in either case, to belong to the defendants. "And it is further agreed that said firm [the defendants] is to build any number of said machines more than six that said Weed [the plaintiff] may order, if said Weed does not order more than twelve at any one time." "And it is further agreed that, if said Weed shall order any number of machines, not more than twelve, said firm is to build two of them " " each month thereafter, until the whole order is filled." "And said Weed is to have the right to take a machine at any time by paying said firm $140." "And it is further agreed that said Weed is to furnish one set of patterns, and only one set of patterns, free of expense to said firm, and said firm is to have the right to build and vend any number of said machines, provided for each and every machine built and sold he receives the amounts above stated from said firm." "It is also further agreed that either party to this contract may terminate it by giving the other four months' notice; but, when notice is given, all orders up to the end of that time which have been given are to be filled as above stated, and all machines not completed to be completed in the manner above stated; and all machines which said Weed orders, together with any others which said firm may have built, or may be building at the time notice is given, to the number of six, are to be taken by said Weed, and paid for at the rate of $140 apiece within one year after the termination of the contract, provided said notice is given by said Weed ; but if notice is given by said firm, then for all machines ordered or built or being built at the time the contract terminates, said firm is to take the same and pay said Weed therefor $140 apiece, or deliver the same to said Weed built in a complete and workmanlike manner, and ready for immediate use, within one month after the termination of the contract, by said Weed's paying said firm therefor for each machine $140 within six months after the termination of the contract, the same to be at the option of said Weed, which shall be done ; if said firm takes the machines as above, said Weed is to have the right to sell as many of them as he can ; and for every machine so sold

said Weed is to receive the sum of $20 as soon as the same is sold." " And it is further agreed that, if said Weed is not paid the sums above stipulated by said firm, at once, on the sale of each and every machine, then said Weed shall have the right to terminate this contract at once, without notice and without injury to any damages that may have accrued to him by reason of any breach of this contract by said firm. And it is agreed that no machine is to be sold for less than $300." " And it is further agreed that said Weed is to hold said firm harmless in all cases of sales of said machines by said firm, and in no other case, against any and all suits brought against said firm for an alleged infringement of said Weed's patent on any other patent or patents."

The declaration further alleged that " the defendants did build six machines according to the terms of said contract, four of which were sold and disposed of by the plaintiff, and the proceeds went into the hands of the defendants, and two of which now remain in the hands of the defendants undisposed of; and the plaintiff says he furnished one set of patterns according to the terms of said contract, and has performed all other conditions precedent to said contract; and the plaintiff says he did order, on or about the last of May or first of June 1864, twelve more of said machines over and above the said six, and the defendants wholly neglected and refused to build the said twelve according to the plaintiff's order and the terms of said contract, and did wholly neglect and refuse to do so up to the termination of said contract and ever since; and the plaintiff says the defendants gave the plaintiff, on or about June 22, 1864, the requisite notice according to the terms of said contract to terminate the same on or about October 22, 1864; and the plaintiff says it was his option that the defendants should pay him $140 apiece for all machines ordered, built or being built at the time the contract terminated, and gave the defendants notice accordingly; but the defendants, notwithstanding the same, have neglected and refused, and now neglect and refuse, to pay the plaintiff according to the terms of said contract, though often requested to do so, to wit, to pay the plaintiff $140

apiece for two machines now in the hands of the defendants undisposed of, and the twelve machines ordered by the plaintiff as above stated."

The answer admitted the making of the contract, and the building by the defendants of six machines pursuant to it, but alleged that the defendants " had given notice to the plaintiff terminating the said contract, as therein provided, before the plaintiff gave any order to them for the building of twelve additional machines;" denied that the defendants " were bound to fill said order, if any such was given, as alleged, for the building of said twelve additional machines;" and denied that " the plaintiff did order of them twelve more of said machines as alleged;" " and as to the two machines built by them under said contract and not sold, the defendants say that the same have not been sold, and cannot be sold, and they deny that they agreed to take the same and pay the plaintiff therefor as alleged, except after a sale thereof made; and the defendants deny that they owe the plaintiff $140 for each of twelve machines alleged to have been ordered of them, or any part thereof, as alleged, or ever promised to pay said sums therefor; and the defendants say that, before and at the time of making said contract with the plaintiff, the plaintiff represented to them that they could build the machines in said contract mentioned without liability to any other party, and that he was lawfully authorized to license them so to build said machines, and that all pretensions of other parties to the contrary were unfounded, and that no risk whatever was incurred by the defendants in making and executing said contract in this respect, and that he owned the exclusive right to make the said machines and all material parts thereof; and the defendants were thereby induced to enter into the said contract; and the defendants were, long before the date of the plaintiff's writ, notified and cautioned by other parties, claiming to be patentees of material parts of said machines, that they would be held accountable for infringement for all acts done in fulfilment of their said contract with the plaintiff, and the defendants are ignorant whether the representations made by the plaintiff to them as aforesaid were true or false, bu

allege the same to be untrue, and that so their said contract was without consideration and void for misrepresentations."

At the new trial in the superior court, at December term 1868, before *Putnam*, J., without a jury, the judge reported the case as follows:

" The plaintiff and the defendants entered into the contract, dated November 10, 1863, as alleged in the declaration; and in pursuance of this contract the defendants proceeded to build six machines, under the plaintiff's patent, the patterns for which, excepting the pulley pattern, as hereinafter stated, were furnished by him. Before these six machines were all made, letters hereto annexed, dated respectively May 12, May 18 and June 22, passed between the parties."

The letter of May 12 was written by the defendants to the plaintiff; and in it they stated that " stock and labor have advanced so much that we shall be under the necessity of making a new arrangement after completing the first six machines," and asked the plaintiff to come to see them.

The letter of May 18 was written by the plaintiff to the defendants ; and in it, after stating that it was not convenient for him to go to see the defendants at once, but that he would do so soon, and, alluding to a machine sold to parties in Montreal, he continued : " The money, $300, for the machine to Montreal, was paid to your order before I came from there. Please deduct expense of the pulley pattern, if you have got one, and send me by express the remainder of what is due me. There is something yet due to you for altering the patterns. Please take that also out of the $160 due me on the machine. If you have not got a pulley pattern yet, I will find you one, or send you whatever pulleys you may need while in Canada. I got a number of orders for machines, and have agents there who will do all that can be done in selling them for me. I shall now pay my whole attention to selling and setting up machinery. Please finish off those now begun as soon as possible; also be getting the castings for more. I shall want twelve more before you will be able to finish them. Please hurry them as fast as possible.

Please let me know if it will be convenient for you to make the patterns and machines for me."

The letter of June 22 was written by the defendants to the plaintiff; and in it they stated: " We can finish the six machines without a pulley pattern, but shall need one before making any more machines. You will recollect that we wrote you May 12, and again on May 24, to the effect that we could make no more machines after the first six without a new arrangement, on account of the advance in price of stock and labor. We intended that as a notice of termination of contract; but if it was not a legal notice, then we hereby give notice that we shall terminate the contract dated November 10, 1863, according to the terms therein specified, viz.: in four months from this date." It did not appear, from the report, that the letter of May 24, herein alluded to, was introduced in the case.

" The plaintiff, after receiving the letter of May 12 and sending the letter of May 18, and before the completion of all said first six machines, and before the reception of the letter of June 22, had an interview with the defendants in regard to building machines by them, under the contract, in addition to the six expressly provided for in the contract. The defendants then told the plaintiff that they did not regard his letter to them of May 18 as an order for additional machines under the contract, and asked him if he so regarded it. He told them, in reply, that he did ; and that he wanted them to build twelve additional machines, at any rate, and wished them to consider him as then giving an order for twelve more machines, if his letter was not such an order. This was after the defendants had made four of the six machines, and before they had completed the last two of said six. The defendants proceeded to finish the two last machines, (the fifth and sixth,) but did not make any more as ordered or requested by the plaintiff, and refused so to do. Four of the six machines made by the defendants were sold, and the proceeds thereof divided, pursuant to the terms of the contract and the other two still remain unsold in the defendants' hands though held for sale since they were finished in the summer of

1864, the plaintiff having claimed that they belong to the defendants. There was a demand for these machines in the market in 1864, at the price of $300, and the difference between what the defendants agreed to build these machines for, and what the plaintiff would have been required to pay others for building them, was $114 each. The plaintiff, before commencing this suit, notified the defendants that he should look to them to pay him the sum of $140 on each and all the machines, either made, being made, or ordered, sold or not sold, claiming those sums as payable to him in consequence of the defendants' having terminated the contract, and of the provision of said contract giving him a certain option in such case. The letter of May 12 was written and received before any order for additional machines had been given by the plaintiff to the defendants, and the letter of May 18 was written and received before the completion of said six machines, the words in said letter, 'those now begun,' referring to those of the first six not then finished.

" At the time of making said contract of November 10, 1863, letters patent of the United States had been issued to Churchill & Hatch, dated before the plaintiff's letters patent, for a machine which the defendants claimed was in some respects like that described in the plaintiff's patent, but which the plaintiff denied. The plaintiff took a license from Churchill & Hatch, which was revoked by them before November 10, 1863, the plaintiff refusing to make payments under it, claiming that the patent was invalid. This patent of Churchill & Hatch was surrendered on or about May 1866, and reissued on or about July 24, 1866. No other evidence was offered in reference to the patents than is here referred to. The defendants were notified on July 14, 1864, by Churchill & Hatch, that they should hold the defendants liable for infringement of the patent, on account of the machines which they had built, and the defendants were so notified before the surrender and reissue of the Churchill & Hatch patent, but the defendants did not inform the plaintiff that they were so notified till December 2, 1864. Churchill & Hatch brought suits against the plaintiff for an infringement of

patent, and prosecuted the same from 1862 till May 1866, when they discontinued said suits."

" The plaintiff did not furnish the defendants with the pulley patterns for the six machines; but the defendants furnished the pulleys, and charged them to the plaintiff, who paid the defendants for them. They notified the plaintiff that they could finish the six machines without any pulley patterns, but that they should need one before making any more. They did not, however, request the plaintiff to furnish them with such pattern for the building of additional machines; nor did they decline to build them on this ground, when ordered, but on the ground of an advance in the price of labor and stock."

" The plaintiff made no claim in this suit on account of any of the six machines actually built under the contract, two of which remain unsold, but claimed damages for the refusal of the defendants to proceed in building the machines ordered in addition to the six, and that he was entitled to recover the sum of $140 for each machine not built according to said order, or else the difference between what the defendants agreed to build them for, and what he would have been required to pay others for building them, which additional price is the sum of $114, and, for the purposes of this hearing, agreed that he should only be entitled to recover, as damages, the said sum of $114 for each machine which the defendants should have made under the contract.

" Upon these facts, I find that the plaintiff is entitled to recover the sum of $1407.90 from the defendants, being at the rate of $114 each for ten machines, with interest on the same from the date of the writ. To this ruling and finding the defendants except, and the facts are reported by me to the supreme judicial court."

*F. A. Brooks*, for the defendants. The plaintiff alleged in his declaration, and, according to the terms of the contract and the rules of law, ought to have been required to show, that he furnished a complete set of patterns, as a condition precedent to his right to hold the defendants accountable to him. The defendants did not lose the benefit of this ground of defence merely

because they assigned other reasons for not proceeding to build the machines ordered by the plaintiff. They were not bound to state any reasons whatever; and, not having been asked for reasons, or required to give any, were not estopped by, or limited to, such only as were assigned. The facts on this point did not appear in the record when the case was previously before this court.

If the defendants did commit a breach of contract, yet the plaintiff's election not to take any machines ordered by him was an abandonment of all claim for damages occasioned by the nonconstruction of the machines, as much so as if the defendants had constructed the machines, and he had made such election afterwards; and he in his declaration has put his claim of damages solely upon the supposed liability of the defendants to pay him at the rate of $140 on each machine, but the court in its previous decision has given a construction to the contract at variance with such a claim.

If the plaintiff, notwithstanding his election to turn over to the defendants any machines made (or presumed to have been made) upon the order given by him, was still at liberty to claim that he has suffered actual damage from not getting the machines; and if he may under his declaration recover damages on the basis of loss occasioned by the defendants' not building the machines as ordered; then the defendants contend that he has not suffered any such other loss or damage, upon the facts reported, it not appearing that he, at and after their refusal to build the machines, either wanted them, or procured them elsewhere, or tried to do so, or expended any money or incurred any liability in consequence of the act of the defendants. *Hamilton* v. *McPherson*, 28 N. Y. 72. Apart from the alleged liability of the defendants to the plaintiff on the option clause, (which according to the previous decision cannot be enforced,) the plaintiff has not proved, and cannot prove, any actual damages as sustained by him from the defendants' alleged breach of contract, because by the contract any right of the plaintiff to advantage or benefit from machines constructed by the defendants depended upon the happening of at least one of two contingencies,

namely, the exercise by himself of the right to take the machines at $140, which he declined to do, or the determination of the defendants to sell them at not less than $300 each, thereby becoming accountable to the plaintiff for $140 on each sale; but as the machines, when constructed, remained the property of the defendants, and by reason of the increased cost of building would have been worth more than $300, and as it does not appear that more than $300 each could have been obtained for them, and it does appear they were threatened with prosecution by prior patentees in case they should make any sale of machines, it therefore does not appear that any sales would have been made in fact; and the failure of the plaintiff to take the two machines previously built, (and still unsold,) though at liberty to do so during all this time, suffices to show that, if any demand existed for these machines, yet they must have been unsaleable, from a fear of the claims of other patentees, or some other cause. The fact of a demand existing for machines of this kind at $300 means only machines freed of claims of patentees; and it does not appear to have been in the power of either party to sell them since the defendants' refusal to build.

The rule of damages adopted in the superior court, if applicable to any case, is inapplicable where there is no relation of vendor and vendee; nor could the defendants be held accountable as for ten machines in any event, unless the reasons assigned by them for declining to build (understood by the court below to be a waiver of objections for want of patterns) are to have such effect as a waiver from a time preceding the date of the letter of June 23.

But supposing that the defendants had built the machines as ordered by the plaintiff, and had sold the same so as to become accountable to the plaintiff for part of the proceeds, yet, as by the contract the plaintiff undertakes to indemnify the defendants against responsibility to third parties, in view of the claims of certain prior patentees, (under whom the plaintiff had been a licensee,) the question would still remain whether the plaintiff's share of such proceeds of sale was more or less than he might have to pay to the defendants in saving them harmless

from the claim of said prior patentees; and thus the supposed damage to the plaintiff, according to his own view, is contingent, uncertain, and incapable of calculation upon any facts contained in the report.

*B. C. Moulton & T. S. Dame,* for the plaintiff.

WELLS, J. We perceive nothing, in the report of the case now brought up, to modify the conclusions to which we came at the former hearing as to the construction of the contract, and the rights and obligations of the parties under it. 99 Mass. 53. It was there held that the option, reserved to the plaintiff upon termination of the contract by the defendants, to take all machines on hand at its expiration, paying $140 each ; or to require the defendants to take them and pay the plaintiff $140 each ; applied only to machines that should be in actual existence at that time, either finished or in process of construction. As the defendants had failed to commence upon the manufacture, this provision for such option was rendered inoperative ; and the decision of the court below was sustained, so far as the right of the plaintiff to recover the stipulated sum for each machine ordered was concerned. But as there appeared to have been a breach of the contract, in not proceeding to manufacture according to the order given, the case was remitted to a new trial, to give the plaintiff an opportunity to sustain his action upon proof of damages appropriate to that aspect of the case. The damages have now been assessed, and we have to consider several exceptions of the defendants, both to the assessment of damages and to the maintenance of the action.

1. It is contended that the damages are not appropriate, because they were assessed as if the machines had been required for delivery upon sales by the plaintiff; whereas he had elected not to take any machines ordered by him, and thereby abandoned all claim for such damages, and relied wholly upon his supposed claim under the option clause. The answer to this objection is, that the provision of the contract securing this option to the plaintiff was defeated by a previous breach of the contract, in its main purpose, by the defendants. An attempt to avail himself of that option, in a state of facts under which

it did not exist, could not deprive the plaintiff of his remedy for a general breach of the contract.

His election, under such circumstances, to take his damages in the form in which he supposed they were thus secured to him, cannot be treated as conclusive evidence that he did not want the machines for sale; nor that they would not have been worth to him more than the sum found as the increased cost of manufacture, with reference to which the damages were assessed. The effect of that election, as a matter of fact, was for the consideration of the judge who tried the case, and his conclusion upon it is final.

2. As a matter of pleading, the defendants contend that such damages cannot be recovered under this declaration, because it is framed only for the recovery of the stipulated sum under the option clause. No such question appears to have been raised at the trial; and therefore it ought not to avail here, if the judgment can properly stand upon the pleadings. *Burnett* v. *Smith*, 4 Gray, 50. *Whittaker* v. *West Boylston*, 97 Mass. 273. As the case has been tried upon the general merits, it would be proper, even at this stage, to allow an amendment which would adapt the pleadings to the judgment to be entered. *Nichols* v. *Prince*, 8 Allen, 404. *Colton* v. *King*, 2 Allen, 317. But, upon examining the declaration, we are satisfied that there is a general breach alleged, of so much of the contract as relates to the manufacture of the twelve machines ordered, and in reference to which alone these damages were assessed. The allegation is, (after reciting the order for twelve additional machines,) "And the defendants wholly neglected and refused to build the said twelve according to the plaintiff's order and the terms of said contract, and did wholly neglect and refuse to do so up to the termination of said contract and ever since." The succeeding allegations, necessary to avail of the stipulated sum, under the option clause, as the damages in the case, do not destroy the effect of this general allegation of a breach of the contract.

3. The stipulation that "said Weed is to furnish one set of patterns, and only one set of patterns, free of expense to, said firm," is not distinctly made, by the form of the contract, a con-

dition precedent to the obligation of the defendants to com-
mence upon the manufacture of machines ordered.   The report
of the case does not show that it was found by the judge that
the furnishing of "pulley patterns" was a necessary precedent
act to the commencement of the work of manufacture.   This
court has no means, and it is not its province, to determine that
question of fact.   The report states that the defendants did not
"decline to build them on this ground when ordered, but on the
ground of an advance in the price of labor and stock."   We
observe also that the defendants have not set up this ground of
defence in their answer.   The objection to a recovery on this
ground cannot therefore prevail.

4. The alleged danger of manufacturing and selling these
machines, on account of a supposed infringement upon the pat-
ent rights of Churchill & Hatch, cannot avail the defendants.
Their contract contemplated the probability that claims of that
nature would be asserted, and provided that Weed should hold
them harmless against them.   The case does not show that they
were prevented from performing their contract; nor that the
rights of Churchill & Hatch were paramount, so as to justify
their withdrawing from the performance of it; nor that Weed
has in any respect failed to fulfil his part of the stipulation to
save them harmless.

5. As the judge has found that "there was a demand for
these machines in the market in 1864, at the price of $300;"
and as the plaintiff would have been entitled to require the de-
fendants to take them and pay him $140 each for them, if they
had been constructed according to the terms of the contract, we
can see no ground upon which any exception can be sustained
to the measure of damages adopted by the court below.

6. Regarding the letter of June 22 as the formal notice of
termination of the contract, and the plaintiff's letter of May 18
as an order for twelve additional machines, the defendants were
bound, notwithstanding their notice, to continue to manufacture,
under that order, up to the end of the time fixed for the termi-
nation of the contract; to wit, until the expiration of four
months; making five months in all from the date of the order

The contract required them, in the execution of such an order, to build two of the machines " each month thereafter."

Upon these considerations, we are satisfied that the decision of the superior court ought to be sustained.

*Exceptions overruled.*